UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

RYAN TOTTENHAM
PLAINTIFF

V.

PAMALA TSINTERIS, DOCTOR
SPECTRUM HEALTHCARE SYSTEMS
DEFENDANT

SHARIF NANKOE, DOCTOR
SPECTRUM HEALTHCARE SYSTEMS
DEFENDANT

DOUGLAS DEMOURA
SUPERINTENDENT OF MCI CEDAR JUNCTION
2020-2021
DEFENDANT

SERGIO SERVILLO
SUPERINTENDENT OF MCI CEDAR JUNCTION
2022
DEFENDANT

CAROL MICI
CORRECTIONS FOR MASSACHUSETTS DEPARTMENT OF CORRECTIONS
DEFENDANT

ANDREA HOWE
HEALTH SERVICES ADMINISTRATOR FOR MCI CEDAR JUNCTION
DEFENDANT

JEFFREY FISHER
ASSISTANT DEPUTY COMMISSIONER OF CLINICAL SERVICES
DOC HEALTH SERVICES DIVISION FOR MASSACHUSETTS DEPARTMENT OF
CORRECTIONS
DEFENDANT

Jennifer Puhacz
Director of Treatment for M.C.I Cedar Junction
  DEFENDANT

## PREVIOUS LAWSUIT

Previously a suit was filed on behalf of the plaintiff in state court.

RYAN TOTTENHAM
PLAINTIFF

V.

SPECTRUM HEALTHCARE SYSTEMS
WELLPATH
MASSACHUSETTS DEPARTMENT OF CORRECTIONS

- The suit was dismissed due to the missed deadline, as a result of lack of knowledge, miscommunication and disciplinary issues, causing plaintiff not to have access to mail or material, i.e. pen, paper, envelopes, etc.

I swear under penalty of perjury the forgoing is true.


Ryan Tottenham

### VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

I. INTRODUCTION
1. This is a §1983 action filed by plaintiff Ryan Tottenham, a state prisoner, alleging violations of his constitutional rights citing deliberate indifference and gross departure from accepted medical standards. Plaintiff is seeking injunctive relief and monetary damages. plaintiff also seeks injunctive relief and damages pursuant to the Americans With Disabilities Act.

II. JURISDICTION
2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1343 (a) J42 U.S.C. §1983

III. PARTIES
3. Plaintiff Ryan Tottenham at all times relevant was confined by the Massachusetts Department of Corrections at MCI Cedar Junction

    MCI Cedar Junction
    P.O. Box 100
    S. Walpole, MA 02071

4. Defendant Spectrum Healthcare Systems Dr. Pamala Tsintaris at all times relevant under contract by the Massachusetts Department of Corrections
MCI Cedar Junction
P.O. Box 100
S. Walpole, MA 02071

5. Defendant Spectrum Healthcare Systems Dr. Sharif Nankoe at all times relevant under contract for Massachusetts Department of Corrections
MCI Cedar Junction
P.O. Box 100
S. Walpole, MA 02071

6. Defendant Massachusetts Department of Corrections Superintendent Douglas Demora at all times relevant employed as Superintendent for MCI Cedar Junction 2020-2021
MCI Cedar Junction
P.O. Box 100
S. Walpole, MA 02071

7. Defendant Massachusetts Department of Corrections Superintendent Sergio Servillo at all times relevant employed as Superintendent for MCI Cedar Junction 2022
MCI Cedar Junction
P.O. Box 100
S. Walpole, MA 02071

8. Defendant Carol Mici at all times relevant employed as the Commissioner for the Massachusetts Department of Corrections
50 Maple Street
Suite #3
Milford, MA 01757-3698

9. Defendant Andrea Howe, Health Services Administrator for MCI Cedar Junction at all times relevant under contract by the Massachusetts Department of Corrections
MCI Cedar Junction
P.O. Box 100
S. Walpole, MA 02071

10. Defendant, Jennifer Puhacz, Director of Treatment, At All times relevant under contract To be employed at M.C.I Cedar Junction, By the Massachussetts Department of corrections

19. Defendant Jeffrey Fisher, Assistant Deputy Commissioner of Clinical Services, Department of Corrections Health Services Division, at all times relevant under contract by the Massachusetts Department of Corrections
50 Maple Street
Third Floor
Milford, MA 01757-3698

## IV. FACTUAL STATEMENT

8. February 2020 plaintiff was placed in Behavioral Management Unit due to a severe staff assault that occurred as a result of continued opiate abuse and withdrawal symptoms
- Documented -

9. Plaintiff received a 66 month disciplinary detention unit sanction to be served in STU (Secure Treatment Unit) due to severe mental illness - Documented -

10. Upon arriving at MCI Cedar Junction and entering the Behavioral Management Unit on or around February 2020 plaintiff entered sick call and requested treatment for Opiate Use Disorder
- Documented -

11. At the time plaintiff was using opiates daily and began to withdrawal

12. At a later date, about two weeks later, plaintiff was briefly assessed by nursing with officers present while handcuffed behind back and shackled - Documented -

13. Plaintiff did not receive and medical help and was referred to Spectrum Health Care

14. Approximately 6-8 weeks later plaintiff was seen by Spectrum and denied on the basis that they only treat addicts who are being released to the community - Documented -

15. Plaintiff continued to self medication with Suboxone when available

16. When Suboxone was not available would suffer withdrawals, and subsequently ask medical staff to inform Spectrum that plaintiff needs help with his addiction, to which he received no response. Sick call slips were submitted and never responded to. - Documented -

17. Troy Peterson was admitted into the M.O.U.D. program - Documented -

18. Upon Peterson's admission, plaintiff submitted a request via sick call slip to be re-evalauted.

19. Months after reported referral, plaintiff subsequently suffered withdrawal, before finally being seen by Spectrum staff, and was denied entry into Spectrum M.A.T. or M.O.U.D. due to plaintiff serious mental illness - Documented -

20. Plaintiff refused to leave rec cage in order to get security, medical and addiction staff to give him a second opinion - Documented -

21. Multiple administration staff in MCI Cedar Junction agreed with his need for Opiate Abuse Treatment - Documented -

22. Plaintiff was told his concerns would be relayed to the appropriate staff. - Documented -

23. Plaintiff was taken off accountability status

24. Plaintiff during drug use proceeded to punch himself in the face multiple times resulting in injuries (pictures taken) including two black eyes

25. Plaintiff was then placed on a 1:1 constant observation

26. Plaintiff was not seen by Spectrum or medical staff - Documented -

27. Plaintiff engaged in hunger strike and went two weeks with no food in order to see an actual Spectrum doctor for help with Opiate Abuse Disorder - Documented -

28. Plaintiff broek his hunger strike and was seen approximately 2-3 days after breaking hunger strike by Spectrum doctor to which doctor offered him Naltrexone to treat Opioid Use Disorder - - Documented -

29. Plaintiff reported being afraid of Naltrexone due to adverse effects when taken in the past - Documented-

30. Spectrum advised Naltrexone was plaintiff's only option for treatment - Documented -

31. Plaintiff refused Naltrexone due to not responding well to the drug in the past, to which Spectrum promptly denied treatment for plaintiff at that time - Documented -

32. Plaintiff continued to report opiate abuse and subsequent withdrawals - Documented -

33. Plaintiff went back on hunger strike to not being given medical care for Opiate Abuse Disorder - Documented -

34. In the hospital H.S.U. Unit in MCI Cedar Junction plaintiff tired non-suspended ligature around neck and was saved from death by security staff and placed on 1:1 constant observation - Documented -

35. Plaintiff decided to take Naltrexone despite fears of adverse reactions - Documented -

36. Spectrum drug tested plaintiff, as which time plaintiff was abusing Methadone - Documented -

37. The drug screen was either not tested or disregarded, and Naltrexone was administered, at which time plaintiff became seriously ill - Documented -

38. Plaintiff reported severe withdrawal symptoms to Wellpath nurses as well as Spectrum nurses

39. Plaintiff was discontinued after refusing Naltrexone in three consecutive doses - Documented -

40. No follow up was done and all requests, sick call slips and referrals were not responded to

41. During the previous 18 months to two years of struggle with addiction and Spectrum all grievances were denied or unanswered - Documented -

42. Appeals were subsequently submitted and denied or unanswered - Documented -

43. On June 21, 2022, plaintiff was suspected of using opiates and security was informed - Documented -

44. Inner perimeter security approached plaintiff and ordered him to submit a urinalysis for drug screening - Documented -

45. Plaintiff refused the drug screen due to the punishment that follows - Documented -

46. Plaintiff received a disciplinary report and was removed to accountability

47. Plaintiff was informed he would pay $432 restitution and would lose all Phase 4 privileges he had earned for good behavior

48. Plaintiff had a crisis and proceeded to flood the cell to get attention of authorities - Documented -

49. Plaintiff informed corrections officers he was in crisis and was removed from his cell and placed in the therapeutic module

50. Correctional officers would not remove restraints and also had plaintiff restrained to the door of the module so plaintiff could not turn around to speak to crisis staff - Documented -

51. Wellpath Mental Health staff member John, also Director of the Behavioral Management Unit, refused repeated requests by plaintiff to be removed from restraints - Documented -

52. As a result of not being removed from restraints, corrections officers were immediately present so confidentiality of plaintiff was not observed in order to talk to John through crisis protocol - Documented -

53. Correction officers responded in full riot gear and removed the plaintiff to H.S.U. hospital

55. Upon returning to the Behavioral Management Unit, plaintiff reported to the corrections staff and Wellpath Mental Health Staff he was still using and would begin to withdraw
- Documented -

56. Plaintiff again was placed on accountability and received a disciplinary report and ordered to pay $432 restitution for drug screening - Documented -

57. Four days later, plaintiff withdrawing for three days, and was seen by Spectrum nurses and given a drug screen and no help with withdrawal symptoms - Documented -

58. Over a week later, plaintiff was seen again by Spectrum and drug screened to which he failed for methadone as a result of using 50 mgs of methadone every day of that week - Documented -

59. Another four days of withdrawing, Spectrum finally prescribed Methadone without seeing a doctor once - Documented -

60. Plaintiff received 5 mgs of methadone far below professional practices nationwide
- Documented -

61. Plaintiff reported severe detox symptoms for four days before increased in dosage to 7 mgs
- Documented -

62. Plaintiff reported severe withdrawal symptoms for another 3 days before being increased in dosage to 9 mgs which is still below standard professional practice for private patients starting dosages which are between 10-30 mgs nationally.

63. July 19, 2022 plaintiff met with psychiatrist doctor lawler who informed plaintiff she advocated on his behalf for the past year to receive treatment, as well as emailing Spectrum to criticize them about starting plaintiff on such a low dose - Documented -

64. Spectrum clinician, name unknown, met with plaintiff on July 20, 2022 and agreed that plaintiff is being underdosed

65. From 2014-2022 plaintiff came up positive at least 13 times on drug screens and was administratively punished and charged restitution

66. Also plaintiff was diagnosed with Hepatitis C as a result of injecting opiates in Souza Baranowski Correctional Center

67. As a result of risky behavior and lifestyle, plaintiff was involved in over 14 serious physical fights resulting in injuries to self and others

68. Wellpath, Spectrum, as well as corrections staff were all informed of all preceding evidence and all preceding events.

69. Spectrum was also given releases signed by plaintiff to inquire and receive any and all records from Habit OPCO regarding previous treatment on the street for his Opiate Abuse Disorder, as well as all mental health diagnosis and medical records of injury occured due to opiate abuse lifestyle.

70. Grievances were subsequently filed on plaintiff's behalf regarding all aforementioned complaints

71. As a result of the failures in procedures and deliberate indifferences by Department of Corrections staff, Spectrum staff and Wellpath staff, plaintiff suffered severe illness over extended periods of time as well as disciplinary sanctions, mental, emotional and physical injuries. - Documented -

72. All previous statements and accounts are verified by medical records and Spectrum records via incident reports, medical reports and records taken by Spectrum.

73. On April 6, 2022, Alphonse Kamanzi sent a letter of advocacy to Jeffrey Fisher and Andrea Howe in order to request treatment on plaintiff's behalf prior to the incidents on June 21 and 22 of this year. As well as incidents on June 27 where the plaintiff tested positive for opiates and received disciplinary reports and sanctioned as well as charged $432 restitution.

74. During the drafting of this suit the plaintiff informed his clinician he was preparing to file suit for the treatment he received from Spectrum Healthcare staff.

75. At this time he was raised to only 14 mgs of methadone so far and was reporting severe withdrawals in the afternoon and night time and only mild relief immediately after dosing.

76. Plaintiff was told he would not be receiving any more increases and to file a grievance if he doesn't like it.

77. Two weeks later, plaintiff is still reporting worsening symptoms and he has not been able to either talk to Spectrum Healthcare clinicians or providers to receive clinical treatment or recovery care.

78. Plaintiff is not eating due to worsening symptoms and not receiving any relief or aid from Spectrum Healthcare.

79. Wellpath nurses are screening to offer "comfort medication" for withdrawal symptoms but has only offered temporary relief. The date today is August 10, 2022.

## REQUEST RELIEF

A. Issue an injunction declaring Spectrum & Department of Corrections adjust methadone dose to reasonable dose consistent with professional practice standards given to private citizen patients in order to stop withdrawal symptoms so plaintiff can focus on treatment and rehabilitation

B. Declare defendants violated plaintiff's eighth amendment right to medical care

C. Issue an injunction declaring Spectrum & Department of Corrections follow standard professional practices used throughout the country to treat addiction to opiates as well as declare Spectrum & Department of Corrections fix the referral procedure in order to see patients in a timely fashion, recognizing the severity of Opiate Abuse Disorder

D. Aware compensatory damages for plaintiff's physical and emotional injuries

E. Grant plaintiff such other relief as it may appear plaintiff is entitled to

I swear under penalty of perjury the foregoing is true and correct.